# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TERESA R. DE LA ROSA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COMMISSIOENR of the Social** )<br>**Security Administration,** )<br>)<br>**Defendant.** ) | Case No. CIV-17-283-JHP-SPS |

## REPORT AND RECOMMENDATION

The claimant Teresa R. De La Rosa requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 6, 1980, and was thirty-five years old at the time of the administrative hearing (Tr. 37, 244). She completed seventh grade, and has worked as a poultry eviscerator, fast food worker, laminator, and molding machine tender (Tr. 29, 272). The claimant alleges inability to work since April 10, 2013,[2] due to carpal tunnel in both hands, post-traumatic stress disorder (PTSD), bipolar disorder, depression, right foot with pain status post fascia surgery, diabetes, and high blood pressure (Tr. 17, 271).

## Procedural History

On April 17, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 10, 2012. Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 13, 2016 (Tr. 17-31). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[2] The claimant previously applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on May 9, 2011. The application was denied, and ALJ James Bentley determined that the claimant was not disabled on April 9, 2013. The Appeals Council denied review.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he determined she could perform frequent, but not constant, handling and fingering with the left nondominant upper extremity; must avoid unprotected heights and dangerous moving machinery; could perform simple tasks with routine supervision; could have occasional contact with coworkers and supervisors; could have no work-related contact with the general public; and must avoid concentrated exposure to extreme heat and direct sunlight (Tr. 23). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because she there was work she could perform in the economy, *e. g.*, housekeeping cleaner, conveyor line bakery worker, and small product assembler (Tr. 29-30).

## Review

The claimant contends that the ALJ erred by: (i) improperly assessing her RFC, and (ii) improperly identifying work she can perform.[3] Specifically as to her first contention, she asserts that the ALJ failed to properly evaluate the opinion of a state reviewing physician, failed to account for all her impairments and her use of a cane, and failed to

---

[3] The claimant appears to make an argument that she cannot perform her past relevant work. However, the ALJ came to that conclusion in his step-five decision; he found she could not return to her past relevant work but that there was other work in the economy that she could perform (Tr. 29-30). The undersigned Magistrate Judge therefore declines to address this argument and finds that reversal should be granted on other grounds.

properly evaluate her credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of PTSD, schizoaffective disorder, depression/anxiety, bipolar II disorder, trichotillomania, diabetes mellitus with neuropathy, obesity, hypertension, and mild degenerative disc disease of the cervical and lumbar spine, as well as the nonsevere impairments of fibromyalgia and headaches (Tr. 20). The relevant medical evidence demonstrates that the claimant underwent right carpal tunnel release in 2011, and a right plantar fascia release in 2013 (Tr. 368, 375). Further testing in 2015 was normal on the right upper extremity, but abnormal on the left upper extremity, indicating left median nerve compression neuropathy at the carpal tunnel (Tr. 619). An MRI of the cervical spine in October 2013 revealed a small central, minimally right paracentral disc protrusion at C6-7, and tiny central disc bulge at C5-6 (Tr. 420). Treatment notes around this same time reflect the claimant was in obvious discomfort from joint pain (Tr. 468).

The claimant's treating nurse practitioner completed a physical RFC evaluation, in which she indicated, *inter alia*, that the claimant could sit for twenty minutes at a time, up to one hour per day in an eight-hour workday, and that she could stand ten minutes at a time and walk twenty minutes at a time, but that she did not need an assistive device to stand, walk, and balance (Tr. 564). She further indicated that the claimant would need a sit/stand option at fifteen minute intervals or less, and that she could frequently lift up to ten pounds, but only carry up to five pounds, and that she could occasionally carry up to

twenty pounds (Tr. 564-565). She stated that the claimant's lower extremities were limited due to neuropathy, and that her legs needed to be elevated at 45 degrees when seated (Tr. 565). Furthermore, she stated that the claimant could occasionally finger and only rarely grasp due to neuropathy, and that she could occasionally bend and balance, but only rarely or never perform other postural limitations (Tr. 566). She concluded by stating that she expected to see further decline in the claimant's mobility sensation as the diabetes and neuropathy progressed, and that prolonged standing, walking, and sitting would lead to decreased mobility (Tr. 567).

In March 2016, treating physician Dr. Stephen Medeiros completed a physical RFC evaluation of the claimant. He indicated, *inter alia*, that the claimant could sit/stand/walk ten minutes each at a time, and up to one hour total in an eight-hour workday; that she needed an assistive device to stand, walk, and balance; that she needed rest breaks at hourly intervals; and that she needed a sit/stand option at fifteen-minute intervals or less (Tr. 627). He further indicated that she could rarely lift/carry up to five pounds, and never more than that, and that her lower extremities were limited for rapid movements, but that she did not need her legs to be elevated when seated (Tr. 628). He checked boxes indicating that the claimant could rarely or never perform most postural and manipulative limitations, although she could occasionally climb stairs and ramps (Tr. 628-629). He wrote that testing showed marked neuropathy to bilateral hands and feet, that she ambulates with a limp, and that she is unable to perform some tests (Tr. 630). He further stated that her diagnoses were COPD, diabetes mellitus, neuropathy, and fibromyalgia (Tr. 630).

Treatment records from that same time period support his assessment of leg limp, decreased range of motion, and neuropathy (Tr. 752).

The claimant presented to Wildhorse Family Practice BHU in Sallisaw, Oklahoma, and was assessed with schizoaffective disorder, depressed type; PTSD; and panic disorder with agoraphobia (Tr. 407).  On June 14, 2014, she was assessed at Crossway Counseling Services, LLC in McAlester, Oklahoma, and her diagnoses included PTSD, drug remission, and schizoaffective disorder unspecified (Tr. 481).

On March 2, 2015, Dr. Kathleen Ward conducted a mental status examination of the claimant, in which she assessed the claimant with PTSD, bipolar II disorder, trichotillomania, and generalized anxiety disorder (Tr. 531).  She noted that the claimant was encouraged to continue in mental health care, and she estimated that the claimant had low intellectual abilities (but above an IQ of 70), and that she had some deficits in judgment (Tr. 530-531).

In December 2015, Dr. Parind Shah completed a Medical Source Statement regarding the claimant's mental impairments, in which he assessed thirty-five different areas of functioning.  He indicated that, of those 35 areas, the claimant was severely limited in twenty-one of those areas, including all of the areas related to concentration and persistence and almost all of the areas related to social functioning (Tr. 623-625).  Additionally, he noted five marked limitations and eight moderate limitations (Tr. 623-625).  He noted that her diagnoses were PTSD, schizoaffective disorder unspecified, major depression/anxiety, and bipolar disorder, and he noted that her physical impairments also included high blood pressure, uncontrolled diabetes, and carpal tunnel syndrome (Tr. 625).

State reviewing physicians indicated that, physically, the claimant could perform light work with no manipulative, postural, visual, communicative, or environmental limitations (Tr. 118-120, 148-149). As to her mental impairments, state reviewing physician Phillip Massad, Ph.D., found the claimant markedly limited in the three typical areas of ability to understand an remember detailed instructions, carry out detailed instructions, and interact with the general public (Tr. 120-121). He concluded that she could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 121). On reconsideration, William H. Farrell, Ph.D., largely agreed with Dr. Massad's assessment, with minor variations. Notably, Dr. Farrell also indicated with regard to her marked limitations regarding understanding and remembering detailed instructions that she retained the capacity to understand and remember simple one- to two-step instructions, and he later indicated that she retained the capacity for concentration, persistence, and pace for one- to two-step instructions for two-hour periods over an eight-hour day throughout a week (Tr. 150). He then concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a routine work situation, but that she could not relate to the general public (the same mental RFC as assessed by Dr. Massad despite the differences in their findings) (Tr. 151).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. For every treating, consultative, or other source opinion in the record, the ALJ assigned little weight, while assigning great weight to the

opinions of the state reviewing physicians, although he assigned a "somewhat more restrictive" RFC (Tr. 24-29). He then concluded that the longitudinal medical evidence, objective findings, and inconsistencies in the record did not support the claimant's allegations (Tr. 29). The ALJ recited a notation in the record that reflected the claimant used a cane, but that bilateral neuropathy of the hands made it difficult to use it, but he did not address the cane in relation to his RFC assessment (Tr. 26).

The claimant asserts that the ALJ erred in formulating her RFC, and the undersigned Magistrate Judge agrees. As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include some limitations related to the claimant's "mental impairments" in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe mental impairments of PTSD, schizoaffective disorder, depression/anxiety, bipolar II disorder, and trichotillomania. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Likewise, the ALJ failed to connect the claimant's physical impairments of bilateral lower extremity diabetic neuropathy, bilateral lower extremity edema, spinal degeneration, and obesity, to the assigned RFC. This was a significant omission here because these impairments can have limitations that directly impact the claimant's ability to perform

work.  Instead, the ALJ should have explained why the claimant's severe impairments did not call for corresponding limitations in the RFC.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).  Moreover, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC.  Both of these errors require reversal.  *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration.  This was reversible error.").  *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th  Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain.  He did not include any such limitations in either his RFC determination or his hypothetical question.  Nor did he explain why he excluded them.  In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further rejected most of the opinions related to her mental impairments because they were based on subjective complaints he rejected.  *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible

in part because of evidence of her noncompliance with prescribed psychotropic medications.  However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference.").  This was particularly apparent in his rejection of every treating and examining source in the record.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].

Medical opinions from a treating physician are also entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting* Soc. Sec. R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted]. Here, as described above, the ALJ rejected every opinion of her examining and consultative physicians, in favor of nonexamining physicians' opinions, while engaging in improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Social Security regulations likewise provide for the proper consideration of "other source" opinions such as that provided by the claimant's treating nurse practitioner, Ms.

Burns, herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ performed no such analysis here, instead summarizing and rejecting it by simply stating that "extensive objective testing has failed to demonstrate that claimant has severe impairments which could reasonably be expected to cause such significant limitations" (Tr. 28). There is no indication that the ALJ properly weighed these factors in his analysis. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original].

Finally, despite the evidence and testimony in the record before him, the ALJ only recited evidence that mentioned her difficulty using the cane she had, and therefore made no findings regarding her use of a cane in relation to the RFC (Tr. 26). *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device. The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane."). *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). This indicates further deliberate efforts to pick and choose among the evidence to use only favorable portions in support of the ALJ's opinion. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**